1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

JAMES S. FARR, on behalf of himself and all
others similarly situated,

9

Plaintiff,

10

v.

11

PRIVATE ADVISORY GROUP, LLC,

12

Defendant.

13

Case No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMAND

14

**INTRODUCTION**

15      1.      Plaintiff brings this action on behalf of a class (the "Class") consisting of himself

16   and all others who purchased securities issued by Aequitas Holdings, LLC or its affiliated

17   entities ("Aequitas") from or through Private Advisory Group ("Defendant").

18      2.      Aequitas perpetrated a massive scheme to defraud and misuse investor assets.

19   Investors were led to believe they were investing in a portfolio of trade receivables in the

20   healthcare, education, and consumer sectors. In reality, however, since at least May 2014 new

21   investor funds were primarily used to pay prior investor redemptions and interest payments in a

22   classic Ponzi-like fashion.

23

24   COMPLAINT - 1
Case No. _____

STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15ᵗʰ Ave W, #300.| Seattle, WA  98119
Tel: 206-448-1777

3.      As time went by, Aequitas become increasingly insolvent and dependent on new investor money. By late 2015, Aequitas could not sell new securities fast enough; it was ultimately forced to admit it could not satisfy investors' redemption requests or make interest payments, leading to its implosion, the termination of all its employees, a lawsuit by the Securities and Exchange Commission, various private lawsuits, and a request to appoint a receiver.

4.      Defendant is a registered investment advisor in which Aequitas owns a controlling interest. Defendant has approximately 330 clients invested in Aequitas, more than any other registered investment advisor in the country. Defendant was selling Aequitas securities by means of untrue statements of material fact and omission of material facts, and continued placing new investor money with Aequitas right until its collapse. As a result of Defendant's wrongdoing, it is liable to return to all Aequitas investors the money they paid for Aequitas securities, plus 8 percent interest from the date of purchase, plus attorney fees and reasonable costs.

5.      Defendant's Chief Executive Officer, Chris Bean, acknowledged Aequitas securities were sold with untrue statements of material fact and omissions of material fact, admitting, "I made investment recommendations that seemed prudent at the time but have proven to be disastrous. I was lied to by people I trusted." *See* Manning, Jeff, Seattle Times, *Investment Adviser*: Aequitas Lied to Investors, available at http://www.seattletimes.com/nation-world/investment-adviser-aequitas-lied-to-investors/, last visited on September 20, 2016.

/ / /

/ / /

/ / /

COMPLAINT - 2
Case No. _____

**PLAINTIFF**

6.      Plaintiff James F. Farr is a resident of Sammamish, Washington. On or about November 24, 2016, Plaintiff purchased $100,000 Aequitas securities from and through Defendant. Plaintiff has lost all or a substantial portion of the value of his Aequitas securities.

**DEFENDANT**

7.      Private Advisory Group, LLC ("Defendant") is a limited liability corporation with its principal place of business at 16880 NE 79th Street, Redmond, Washington 98052.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq*., which vests original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the Class or Plaintiff differs from that of any Defendant. The $5 million amount-in-controversy and diverse citizenship requirements of CAFA are satisfied.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b), (c), and (d) because Defendant resides, transacts business, and is found within, and/or has agents within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

10.      This Court has personal jurisdiction over Defendant because Defendant: (a) is a citizen of the State of Washington, (b) transacted business in this District; (c) directly or indirectly sold Aequitas securities in this District; (d) has substantial aggregate contacts with this

COMPLAINT - 3
Case No. _____

1  District; and (e) engaged in alleged wrongdoings that caused injury to, persons and entities

2  residing in, located in, or doing business in this District.

3  ## FACTUAL ALLEGATIONS

4      11.     Aequitas was founded in 1993. Aequitas conducted its business activities through

5  various affiliated entities. The complex organizational structure includes approximately 75

6  subsidiaries including Defendant.

7      12.     Since its inception, Aequitas has raised hundreds of millions of dollars from

8  thousands of investors through the issuance of promissory notes. The notes typically had terms

9  of interest rates ranging between 5 and 15 percent.  Interest was generally paid to investors on a

10  monthly or quarterly basis or automatically reinvested in the notes.

11      13.     Aequitas sold promissory notes to investors through registered investment

12  advisors, many of which it owned. Aequitas owns a controlling interest in Defendant. Defendant

13  sold Aequitas promissory notes to its clients, playing a crucial role in connecting Aequitas to the

14  capital it needed to bring new investors into the Ponzi-like investment scheme.

15      14.     Aequitas' promissory notes were not registered under any state or federal

16  securities laws. Aequitas investors were generally provided with a private placement

17  memorandum, which identified five specific uses of investment proceeds: (1) funding or

18  financing of student loan receivables; (2) funding or financing of healthcare receivables; (3)

19  funding or financing of other receivables and loan portfolios; (4) engaging in other debt

20  transactions and equity investments in third party private credit strategies; and (5) providing

21  working capital and operating credit to Aequitas. Investors were told that Aequitas notes were

22  secured by Aequitas' personal property.

23

24  COMPLAINT - 4
   Case No. _____

15.     In addition to the private placement memorandums, Aequitas and/or Defendant provided investors with quarterly updates describing the financial performance, assets, and uses of investor funds. These quarterly updates were replete with material misrepresentations and omissions. Aequitas and/or Defendant continued to mislead investors into believing their Aequitas investments were safe and secure right until Aequitas's collapse. Indeed, Defendant sold $200,000.00 of Aequitas securities to one of its clients in December 2015, just days before Aequitas's collapse in February 2016.

16.     Aequitas's receivables business was heavily concentrated in education loans purchased from Corinthian Colleges ("Corinthian), a for-profit education provider whose receivables made up approximately 75 percent of the receivables owned by Aequitas. Many of the receivables purchased from Corinthian were subject to recourse agreements that required Corinthian to buy back from Aequitas the full value of any student loans that became delinquent by 90 days.

17.     In May 2014 Corinthian filed for Chapter 11 bankruptcy protection, and in June 2014 it missed a $4.8 million payment due under a recourse agreement with Aequitas. Corinthian made no further recourse payments to Aequitas. Corinthian's bankruptcy and subsequent litigation concerning its tuition practices made it difficult for Aequitas to collect the receivables it purchased from Corinthian.

18.     Prior to Corinthian's default, Aequitas relied heavily on raising new investor funds to meet its weekly cash obligations. The loss of income from Corinthian exacerbated the cash crunch and made it even more dependent on new investor funds to meet obligations, including redemptions and interest payments to prior investors.

COMPLAINT - 5
Case No. _____

19.     Aequitas produced internal cash models and projections daily that showed it was in dire financial condition. According to cash models and projections prepared at the end of April 2014 (before Corinthian's default), Aequitas projected sufficient cash to meet its obligations for two weeks. By the end of June 2014 (after Corinthian's default), Aequitas projected a short-term cash shortfall of $3.1 million. By July 2014, it projected a short-term cash shortfall of $19.1 million.

20.     As Aequitas' financial condition worsened, it refused to reduce operating expenses and instead continued to maintain a private jet, opened a new lavish office in New York City, renovated its headquarters in Lake Oswego, Oregon, and paid large salaries and bonuses to its employees.

21.     Aequitas engaged in a calculated scheme to mislead investors into believing that investments with it were secure, stable and liquid. Meanwhile, the opposite was true. Aequitas was hemorrhaging cash and using new investor money to temporarily delay the nightmare on the horizon for retirement investors.

22.     Aequitas did not disclose to investors that its securities were required to be registered under Washington securities laws.

23.     Aequitas had a conflict of interest because it owns a controlling interest in Defendant. Defendant did not properly disclose to investors that Aequitas owned a controlling interest in Defendant.

24.     Aequitas omitted material facts concerning the commissions and other compensation it paid that were directly linked to the sale of its securities.

25.     Aequitas did not disclose that repayment of its notes depended largely on its ability to bring in new investor funds.

COMPLAINT - 6
Case No. _____

26.     Aequitas did not disclose that it was the subject of an investigation by the Securities and Exchange Commission.

27.     Aequitas did not disclose that Corinthian was the primary source of its student loan receivables.

28.     Aequitas did not disclose that in June of 2014 Corinthian defaulted on its recourse obligations.

29.     Aequitas did not disclose the administrative, regulatory, legal, and public perception difficulties undermining and diminishing the value of Corinthian's business model and Corinthian's ability to meet its recourse obligations regarding the student loan receivables.

30.     Aequitas did not disclose that it pledged Corinthian and other debt receivables as collateral to secure loans from third-party lenders.

31.     Aequitas did not disclose that it was leveraging investor funds to secure substantial third-party financing to meet its business and credit obligations.

32.     Aequitas did not disclose that, beginning in early 2014 after Corinthian's default, it had a growing cash shortfall and essentially began operating like a Ponzi-scheme.

33.     Aequitas consistently misrepresented or omitted material information concerning its financial strength. Among other things, it made false and misleading statements to investors in quarterly statements and in its financial reports concerning its investment assets and the value of those assets.

34.     Aequitas concealed that it was insolvent through intercompany loans and other financial reporting chicanery. For example, it reported as an asset on its financials a $180.3 million debt from an affiliate it knew could not and never would repay the debt. This important information was never disclosed to investors.

COMPLAINT - 7
Case No. _____

STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, #300.| Seattle, WA  98119
Tel: 206-448-1777

35.     Aequitas did not disclose that it had repeatedly been investigated by regulators, censured, and fined for violating rules and regulations.

36.     Aequitas misled investors about the use of the proceeds of their investments. The written investment materials stated that funds would be used primarily to purchase receivables, but in truth an increasing majority of funds raised from investors was used to pay redemptions and interest payments to other investors.

37.     Aequitas did not tell investors they were investing large sums of money in Aequitas so it could meet some of its obligations to prior investors. As Aequitas's cash flow shortage increased, so did its reliance on new investor money to the point that, by 2014, virtually all new investor money was used to satisfy prior investors and to pay operating costs including lavish expenses and salaries. Almost no new money was being used for the stated purpose of the investments.

38.     Aequitas did not disclose that investor funds were being used to pay large salaries to Aequitas executives and fund lavish expenses, such as a private jet.

39.     Even after it knew it was insolvent, Aequitas and Defendant continued selling securities to new investors and persuading prior investors to continue investing. Defendant persuaded an investor to purchase roughly $200,000.00 of Aequitas securities in December 2015, just days before Aequitas collapsed.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23(a) and (b)(2)  of the Federal Rules of Civil Procedure seeking equitable and injunctive relief on behalf of the following nationwide Class:

> All persons and entities that purchased or held securities issued by Aequitas as a
> client of Private Advisory Group.

COMPLAINT - 8
Case No. _____

STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, #300.| Seattle, WA  98119
Tel: 206-448-1777

41.     Plaintiff reserves the right to expand, modify, or alter the Class definition in response to information learned in discovery.

42.     The exact numbers and identities of members of the Class is information in the exclusive control of Defendant.  However, given the volume of sales and related transactions, Plaintiff reasonably believes that the Class consists of at least 300 members, and those members are sufficiently numerous and geographically dispersed throughout the United States, its territories and the District of Columbia to make joinder of all Class members impracticable.

43.     There are numerous questions of law and fact which are common to the claims of Plaintiff and the Class, including, but not limited to:

a.     Whether Aequitas securities were sold in violation of the registration requirement of the Washington securities laws.

b.     Whether Aequitas securities were sold by false statements of fact or omissions of material fact;

c.     Whether, and to what extent, the Defendant's conduct caused injury to Plaintiff and members of the Class, and, if so, with respect to the Damages Class, the appropriate measure of damages.

44.     Plaintiff's claims are typical of the claims of the members of the Class.

45.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

46.     Plaintiff is represented by counsel competent and experience in the prosecution of securities and class action litigation.

47.     The questions of law and fact common to the members of the Class  predominate over any questions affecting only individual members.

COMPLAINT - 9
Case No. _____

48.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

b.   The Class is readily definable and one for which records should exist in the files of Defendant.

c.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

d.   Class treatment will permit many similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

e.   Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate on an individual basis.

49.   This class action presents no difficulties of management that would preclude its maintenance as a class action.

## COUNT I

## Violation of Washington Securities Law – RCW 21.20.010

50.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

51.   Defendant sold the Aequitas securities to Plaintiff and the Class members in violation of RCW 21.20.010.

COMPLAINT - 10
Case No. _____

STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, #300.| Seattle, WA  98119
Tel: 206-448-1777

52.     Within three years before this action commenced, Defendant sold unregistered securities to Plaintiff and the Class members in violation of RCW 21.40.430.

53.     Within three years before this action commenced, Defendant sold securities in violation of RCW 21.20.010 by making untrue statements of material facts and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading. Plaintiff and the Class members relied on the untrue statements and misrepresentations when purchasing and holding Aequitas securities. Plaintiff and the Class members did not know of the untruths or omissions and in the exercise of reasonable care could not have known about the untruths or omissions.

54.     Defendant is liable under RCW 21.20.010 because Defendant participated in and materially aided unlawful sales of securities.

55.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members have been injured and are entitled to maximum legal and equitable remedies.

## COUNT II

### Breach of Fiduciary Duty

56.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

57.     Defendant owed Plaintiff and the Class members, its clients, a fiduciary duty giving rise to a duty of care with their investments.

58.     Defendant breached these duties as described hereinabove, and as a result Plaintiff and the Class members suffered investment losses.

59.     Plaintiff and the Class members did not discover, and with reasonable diligence could not have discovered, Defendant's breach until Aequitas collapsed in February 2015.

COMPLAINT - 11
Case No. _____

1   60.     Plaintiff and the Class members are therefore entitled to maximum legal and

2   equitable remedies.

3                                   **COUNT III**

4                                   **Negligence**

5   61.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth

6   herein.

7   62.     Defendant owed Plaintiff and Class members a duty of care in connection with

8   Defendant's due diligence related to Plaintiff and Class members' investments in Aequitas.

9   63.     Defendant breached its duty to exercise reasonable care in conducting due

10  diligence, and as a result Plaintiff and Class members suffered investment losses.

11  64.     Plaintiff and Class members did not discover, and with reasonable diligence could

12  not have discovered, Defendant's breach until Aequitas collapsed in February 2015.

13  65.     Plaintiff and Class members are therefore entitled to maximum legal and

14  equitable remedies.

15                              **PRAYER FOR RELIEF**

16  WHEREFORE, Plaintiff prays:

17  A.     That the Court determines that this action may be maintained as a class action.

18  B.     That the Court awards Plaintiff and the Class the maximum damages allowed by

19  law.

20  C.     That the Court awards Plaintiff and the Class their costs and expenses incurred in

21  this action, including reasonable attorneys' fees.

22  D.     That the Court awards Plaintiff and the Class such other and further relief as may

23  be deemed necessary and appropriate.

24  COMPLAINT - 12
    Case No. _____

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff requests a jury trial on all matters so triable.

3

4

DATED this 6th day of October, 2016.

5

6                                                  s/ Brad J. Moore
                                                   Brad J. Moore, WSBA #21802
7                                                  STRITMATTER KESSLER WHELAN
                                                     KOEHLER MOORE KAHLER
8                                                  3600 15th Avenue West, #300
                                                   Seattle, WA 98119-1330
9                                                  Telephone:  206.448.1777
                                                   Facsimile:  206.728.2131
10                                                 Email:  brad@stritmatter.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24    COMPLAINT - 13
      Case No. _____